UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>SUBPOENA OF JOHN KELLY, FORMER SECRETARY OF HOMELAND SECURITY | Case: 1:24–mc–00084<br>Assigned To : McFadden, Trevor N.<br>Assign. Date : 7/11/2024<br>Description: Misc. (O–Deck)<br><br>Misc. No. _____ |

**MOTION TO QUASH THE SUBPOENA FOR THE DEPOSITION OF FORMER SECRETARY OF HOMELAND SECURITY JOHN KELLY
AND FOR A PROTECTIVE ORDER
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ......................................................................................................................... 1

    I.    Factual Background ................................................................................................ 1

    II.    Plaintiffs' Allegations ............................................................................................. 2

    III.    Plaintiffs Seek The Deposition of Former Secretary Kelly Without Seeking Any Other Depositions ........................................................................................... 4

LEGAL STANDARD ................................................................................................................. 6

ARGUMENT ............................................................................................................................... 7

    I.    Depositions of Cabinet Secretaries Are Rarely Countenanced and Courts Routinely Grant Motions to Quash Them .............................................................. 7

    II.    Plaintiffs Cannot Meet the Extremely High Standard for the Deposition of a Former Cabinet Secretary ..................................................................................... 11

CONCLUSION ......................................................................................................................... 14

## TABLE OF AUTHORITIES

### Cases

*Alexander v. FBI*,
    186 F.R.D. 1 (D.D.C. 1998) ............................................................................................. 6, 10

*All. for Glob. Just. v. District of Columbia*,
    Civ. A. No. 01-00811, 2005 WL 1799553 (D.D.C. July 29, 2005) ..................................... 11

*A.P.F. v. United States*,
    Civ. A. No. 20-0065 (D. Ariz.) ............................................................................................. 12

*Bogan v. City of Boston*,
    489 F.3d 417 (1st Cir. 2007) .............................................................................................. 9, 10

*C.M. v. United States,*
    Civ. A. No. 19-05217 (D. Ariz.) ......................................................................................... 2, 12

*Dobson v. Vail*,
    Civ. A. No. 10–5233, 2011 WL 4404146 (W.D. Wash. Sept. 21, 2011) ............................... 9

*FDIC v. Galan-Alvarez*,
    Misc. No. 15-mc-00752, 2015 WL 5602342 (D.D.C. Sept. 4, 2015) ................................ 8, 9

*Franklin Sav. Ass'n v. Ryan*,
    922 F.2d 209 (4th Cir. 1991) .................................................................................................. 7

*In re Dep't of Com.*,
    139 S. Ct. 16 (2018) ................................................................................................................ 8

*In re FDIC*,
    58 F.3d 1055 (5th Cir. 1995) .................................................................................................. 8

*In re McCarthy*,
    636 F. App'x. 142 (4th Cir. 2015) .......................................................................................... 8

*In re Off. of Inspector Gen., R.R. Retirement Bd.*,
    933 F.2d 276 (5th Cir. 1991) .................................................................................................. 9

*In re Dep't of Educ.*,
    25 F.4th 692 (9th Cir. 2022) ......................................................................................... 5, 6, 8

*In re United States (Bernanke)*,
    542 F. App'x 944 (Fed. Cir. 2013) ..................................................................................... 6, 8

*In re United States (Reno & Holder)*,
    197 F.3d 310 (8th Cir. 1999) ........................................................................................ 6, 8, 10

*In re United States (Jackson)*,
    624 F.3d 1368 (11th Cir. 2010)..................................................................................7, 8

*In re United States (Kessler)*,
    985 F.2d 510 (11th Cir. 1993)....................................................................................7, 8

*In re United States (Vilsack)*,
    Civ. A. No. 14-5146, 2014 U.S. App LEXIS 14134 (D.C. Cir. July 24, 2014)..............8

*K.C.R. v. County of Los Angeles*,
    Civ. A. No. 13-3806, 2014 WL 3434257 (C.D. Cal. July 11, 2014) .............................8

*Kelley v. FBI*,
    Civ. A. No. 13-0825, 2015 WL 13648073 (D.D.C. July 16, 2015).............................11

*Lederman v. N.Y. City Dept. of Parks and Recreation*,
    731 F.3d (2d. Cir. 2013)....................................................................................7, 9, 11

*Leticia v. United States*,
    Civ. A. No. 22-7527, 2023 WL 7110953 (E.D.N.Y. Oct. 27, 2023) ..............................3

*Low v. Whitman*,
    207 F.R.D. 9 (D.D.C. 2002) ........................................................................................10

*Matter of Nielsen*,
    Misc. No. 23-80280, 2024 WL 979947 (N.D. Cal. Jan. 24, 2024) ..............................12

*Matter of Sessions*,
    Misc. No. 23-00016, 2023 WL 7308086 (S.D. Ala. Nov. 6, 2023) ........................11, 12

*Nielsen v. United States*,
    Misc. No. 23-80280 2024 WL 2520469 (N.D. Cal. Feb. 21, 2024) .............................12

*Peoples v. Dep't of Agric.*,
    427 F.2d 561 (D.C. Cir. 1970) ................................................................................5, 10

*Simplex Time Recorder Co. v. Sec'y of Labor*,
    766 F.2d 575 (D.C. Cir. 1985) ..........................................................................7, 9, 11

*United States v. Morgan*,
    313 U.S. 409 (1941) ..............................................................................................5, 7, 8

*United States v. Newman*,
    531 F. Supp. 3d 181 (D.D.C. 2021) .................................................................8, 10, 11

*United States v. Wal-Mart Stores*,
    Civ. A. No. 01-CV-0152, 2002 WL 562301 (D. Md. Mar. 29, 2002) ...........................9

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977)......................................................................................................7

**Statutes**

6 U.S.C. § 279 ................................................................................................................................2

8 U.S.C. § 1232(b)(3) .....................................................................................................................2

28 U.S.C. § 1346 ............................................................................................................................3

28 U.S.C. § 2680 ......................................................................................................................... ..3

**Rules**

Fed. R. Civ. P. 26(c) ...................................................................................................................1, 6

Fed. R. Civ. P. 31 .........................................................................................................................12

Fed. R. Civ. P. 45(d)(3)(A) ........................................................................................................1, 6

**Other**

Memorandum for Federal Prosecutors along the Southwest Border,
   https://www.justice.gov/opa/press-release/file/1049751/download ..................................1

Secretaries of Homeland Security,
https://www.dhs.gov/secretaries-homeland-security ........................................................2

Defendant the United States of America (the "United States" or "Government") respectfully moves the Court pursuant to Federal Rule of Civil Procedure ("Rule") 45(d)(3)(A) to quash the subpoena issued to John Kelly, former Secretary of Homeland Security, in the civil action captioned, *Leticia v. United States*, Civ. A. No. 22-7527 (E.D.N.Y.), and for a protective order pursuant to Rule 26(c) to preclude the deposition of former Secretary Kelly.

## PRELIMINARY STATEMENT

Plaintiffs, early in fact discovery and without seeking the testimony of a single other witness, seek to take the extraordinary step of deposing a non-party former cabinet secretary concerning his agency's official actions. *See* Subpoena Issued to Former Secretary John Kelly, Exhibit 1 hereto ("Mot. Ex. 1"). The Court should quash the subpoena, as numerous courts throughout the country have done in similar circumstances, because it would violate separation of powers principles, inappropriately entangle a former cabinet-level official in civil litigation, and subject him and the Government to an undue burden. High-ranking public officials, including the former Secretary, can be deposed only upon a showing of "extraordinary circumstances" justifying the deposition. As set forth below, Plaintiffs cannot make such a showing here.

Accordingly, the Court should quash the subpoena and enter a protective order precluding former Secretary Kelly's testimony.

## BACKGROUND

**I.    Factual Background**

John F. Kelly served as the Secretary of Homeland Security from January 20, 2017 to July 28, 2017. *See* Secretaries of Homeland Security, https://www.dhs.gov/secretaries-homeland-security (last accessed July 10, 2024). In April 2018 (approximately eight months after the end of former Secretary Kelly's tenure at the Department of Homeland Security ("DHS"), and

approximately four months after the separation at issue in this case), then-Attorney General Jefferson Sessions issued a "Memorandum for Federal Prosecutors along the Southwest Border," https://www.justice.gov/opa/press-release/file/1049751/download, directing federal prosecutors at the Department of Justice "to the extent practicable, and in consultation with DHS—to adopt immediately a zero-tolerance policy for all offenses referred for prosecution under [8 U.S.C.] section 1325(a)," which imposes criminal liability for unlawful entry into the United States. In May 2018, then-DHS Secretary Kirstjen Nielsen directed DHS operational components at the border, to the extent practicable, to refer for criminal prosecution all adults who illegally crossed the border regardless of family unit status. *See* DHS Mem. of Apr. 23, 2018, signed May 4, 2018, *C.M. v. United States*, Civ. A. No. 19-05217 (D. Ariz.), ECF No. 379-13 at 22-26. Following Secretary Nielsen's direction, DHS referred adults who had unlawfully crossed the southern border for prosecution. Minor children traveling with those adults were transferred to the custody of the Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR"). *See generally* 6 U.S.C. § 279; 8 U.S.C. § 1232(b)(3).

## II.    Plaintiffs' Allegations

Plaintiffs' allegations are recounted here for the Court's convenience, without the Government conceding the accuracy or completeness of any of the allegations. The parties have stipulated to the use of Plaintiffs' pseudonyms Leticia and Yovany, respectively. *See* Stipulation, *Leticia, supra*, ECF No. 10.

Plaintiff Leticia is a Guatemalan national who, in November 2017, unlawfully crossed the United States-Mexico border into Texas with her then-minor son, Plaintiff Yovany. *See* Mot. to Dismiss, *Leticia, supra*, ECF No. 32-1 at 7. Federal agents apprehended Plaintiffs and placed them into detention. *Id.* Over the ensuing days, Plaintiffs were separated from one another: Leticia was

2

referred for prosecution for unlawful entry and subsequently held primarily in a privately run detention facility in Texas until her eventual removal to Guatemala, while, in the interim, Yovany was transferred to ORR custody. *Id.* at 7-8. Yovany was housed at Southwest Key Programs Casa Kokopelli ("Casa Kokopelli"), a privately run residential shelter in Mesa, Arizona. *Id.* at 8. Plaintiffs allege that Leticia gave Yovany the option of returning to Guatemala with her or staying in the United States; he chose the latter and, in August 2018, opted to be transferred to long-term foster care in San Antonio, Texas. *Id.* Plaintiffs have since been reunited, following Leticia's return to the United States in January 2020. *Id.*

In December 2022, Plaintiffs filed suit in the Eastern District of New York against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2680, bringing claims for intentional infliction of emotional distress; negligence; abuse of process; assault and battery; and conversion. *See* Compl. ¶¶ 106-08, *Leticia, supra*, ECF No. 1. Although Plaintiffs were apprehended and separated in November 2017 in the U.S. Customs and Border Protection ("CBP") Big Bend Sector, they allege that, in July 2017, CBP officials, in a separate sector (the El Paso Sector), "began piloting a policy of intentionally and forcibly separating asylum-seeking parents from their children after making immigration arrests near the U.S.-Mexico border." *Id.*, ¶ 15. They allege that this policy was "later expanded and formalized" by way of the April and May 2018 Justice Department and DHS policies described above. *Id.*

On October 27, 2023, the Honorable Nicholas G. Garaufis denied the Government's motion to transfer the action to the U.S. District Court for the Western District of Texas, and denied in part and granted in part the Government's motion to dismiss. *See Leticia*, Civ. A. No. 22-7527, 2023 WL 7110953, at *1 (E.D.N.Y. Oct. 27, 2023).

3

### III. Plaintiffs Seek The Deposition of Former Secretary Kelly Without Seeking Any Other Depositions

The parties have since begun fact discovery, with depositions to be completed by October 18, 2024. *See* Prop. Sched. Order, *Leticia, supra*, ECF No. 62 at 1. On May 7, 2024, without seeking the deposition of a single other fact witness, Plaintiffs served a notice for the deposition of former Secretary Kelly. *See* Mot. Ex. 2. After the Government informed Plaintiffs that, because former Secretary Kelly was no longer a government employee, Plaintiffs would need to serve a subpoena for his testimony rather than a deposition notice, Plaintiffs served the Kelly subpoena.[1] The subpoena demanded that former Secretary Kelly appear for a deposition on July 12, 2024 at the Washington, D.C. office of Plaintiffs' counsel. Mot. Ex. 1. Neither the deposition notice nor the subpoena specified the topics upon which Plaintiffs seek former Secretary Kelly's testimony.

The parties met and conferred by videoconference on June 5, 2024. During that meeting, counsel for the Government asked Plaintiffs' basis for seeking to depose former Secretary Kelly. In response, Plaintiffs' counsel stated that they believed that the deposition is warranted given former Secretary Kelly's prior position as the Secretary of DHS and role as the senior most policy maker, and they argued that he would have been involved with respect to family separation decisions. Based on these statements, the Government assumes that Plaintiffs are seeking to depose former Secretary Kelly regarding his tenure as DHS Secretary rather than his tenure in other positions, including as White House Chief of Staff. Plaintiffs' counsel further stated that the deposition is warranted because, in their view, government intent is at issue in this litigation.

---

[1] Plaintiffs emailed a copy of the subpoena to the Government on June 17, 2024. On June 24, 2024, the Government informed Plaintiffs that it was authorized to accept service of the subpoena on former Secretary Kelly's behalf as a logistical accommodation, without waiver of any arguments that the Government or former Secretary Kelly may have, including as to the propriety of the requested deposition.

4

Counsel for the Government informed Plaintiffs' counsel that these justifications did not meet Plaintiffs' burden. On July 1, 2024, the Government reiterated its objections to the Kelly subpoena in a letter to Plaintiffs and requested that the parties meet and confer in an effort to potentially avoid motion practice. Mot. Ex. 3 at 1-2. The letter requested that Plaintiffs withdraw the subpoena, and offered to agree that such withdrawal would be without prejudice to Plaintiffs' right to serve the subpoena again at a later point in fact discovery, while reserving all rights to object to the subpoena at that time. *Id.* at 2. The letter requested that Plaintiffs withdraw the subpoena by July 8, 2024, or alternatively, inform the Government whether Plaintiffs' counsel were available for a meet-and-confer regarding this issue. *Id.* The letter further stated that, should Plaintiffs not withdraw the subpoena, the Government intended to move to quash the subpoena by July 11, 2024, because the subpoena sought compliance on July 12, 2024, and that, for scheduling purposes, Plaintiffs should not expect former Secretary Kelly to appear on July 12, 2024. *Id.* Plaintiffs failed to respond by July 8, 2024, and declined to discuss the issue further with the Government during a previously planned meet-and-confer conference on July 9, 2024, stating only that they would not be withdrawing the subpoena but would follow up in writing. On July 11, 2024, Plaintiffs' counsel emailed a letter to the Government stating that Plaintiffs "dispute the Government's assertion that they will be unable to meet the standard for deposing Former Secretary Kelly, and welcome the opportunity to brief the issue. Plaintiffs do not intend to withdraw the subpoena and, should the Government proceed with a motion to quash, Plaintiffs intend to oppose it." Mot. Ex. 4.

       The Government's good-faith efforts to resolve this dispute without motion practice were thus unsuccessful.

**LEGAL STANDARD**

The Supreme Court and courts of appeals have long held that high-ranking federal officials should ordinarily not be "subjected to [an] examination" regarding their official actions. *See United States v. Morgan*, 313 U.S. 409, 422 (1941); *Peoples v. Dep't of Agric.*, 427 F.2d 561, 567 (D.C. Cir. 1970) ("[S]ubjecting a cabinet officer to oral deposition is not normally countenanced."). "[C]ompelling the testimony of a cabinet secretary about the actions she took as a leader of the executive branch" is an "extraordinary action" requiring "extraordinary circumstances." *In re Dep't of Educ.*, 25 F.4th 692, 695 (9th Cir. 2022). In addition to showing extraordinary circumstances, a party must also exhaust other alternatives for receiving the desired information. In particular, to depose a high-ranking government official, a party must demonstrate that the official has personal knowledge related to the litigated claims that cannot be obtained through other means. *Alexander v. FBI*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases).

Rule 45(d)(3)(A) requires a court to quash a subpoena that, among other things, "(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Additionally, Rule 26(c) provides a court with broad discretion, for good cause shown, to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This discretion includes orders forbidding the requested discovery altogether. Fed. R. Civ. P. 26(c)(1)(A).

While the burden of establishing that a subpoena must be quashed typically falls on the movant, that burden is reversed where a party seeks deposition testimony of a high-level government official. *See, e.g., In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant[]"); *In re United States*

6

*(Reno & Holder)*, 197 F.3d 310, 316 (8th Cir. 1999) ("Lee has not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder.").

## ARGUMENT

The Kelly subpoena should be quashed, and a protective order entered, because Plaintiffs cannot meet their burden to show extraordinary circumstances, and because permitting the deposition in this matter of a former cabinet secretary regarding his agency's official actions would violate separation of powers principles and subject him and the Government to undue burden.

I. **Depositions of Cabinet Secretaries Are Rarely Countenanced and Courts Routinely Grant Motions to Quash Them**

The strict limitations on compelling the depositions of high-ranking government officials, particularly cabinet-level officials, are well established, widely recognized, and rooted in important separation of powers concerns. Such depositions are barred absent "extraordinary circumstances." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 586–87 (D.C. Cir. 1985).

Courts have long held that current and former high-level government officials should not ordinarily be compelled to testify concerning their official actions. *See Morgan*, 313 U.S. at 422; *Simplex Time Recorder Co.*, 766 F.2d at 586-87; *Lederman v. N.Y. City Dep't of Parks & Recreation*, 731 F.3d 199, 203-04 (2d Cir. 2013); *Franklin Sav. Ass'n v. Ryan*, 922 F.2d 209, 211 (4th Cir. 1991). As the Supreme Court recognized in *Morgan*, parties litigating against federal agencies are precluded from examining the processes by which high-ranking agency officials make decisions, and it is "not the function of [a] court to probe the mental processes" of agency decision-makers. *Id.* at 422. Restrictions upon deposing high-level public officials thus help preserve constitutional separation of powers. *See Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,

7

429 U.S. 252, 268 n.18 (1977) (noting that "judicial inquiries into legislative or executive motivation represent a substantial intrusion into the workings of other branches of government"). Conversely, compelling the testimony of high-ranking agency officials "would have serious repercussions for the relationship between two coequal branches of government." *In re United States (Jackson)*, 624 F.3d 1368, 1373-74 (11th Cir. 2010) (citing *In re United States (Kessler)*, 985 F.2d 510, 511 (11th Cir. 1993) and observing that "compelling the [Food and Drug Administration] Commissioner's testimony by telephone for 30 minutes disrespected the separation of powers").

As the D.C. Circuit has recognized, this doctrine serves a number of purposes in addition to separation of powers concerns: "(1) to protect the integrity and independence of the government's decision-making processes; (2) to permit high-ranking government officials to perform their official tasks without disruption or diversion; and (3) to limit indiscriminate depositions that would discourage individuals from accepting positions as public servants[.]" *United States v. Newman*, 531 F. Supp. 3d 181, 188 (D.D.C. 2021) (internal citations and quotations omitted); *see also In re United States (Reno & Holder)*, 197 F.3d at 313-14; *In re United States (Kessler)*, 985 F.2d at 512; *Morgan*, 313 U.S. at 422.

In the rare cases in which district courts have ordered such depositions, circuit courts—including the D.C. Circuit—have often granted the extraordinary relief of writs of mandamus to stop the depositions from taking place. *See, e.g.*, *In re United States (Vilsack)*, No. 14-5146, 2014 U.S. App LEXIS 14134, at *1-2 (D.C. Cir. July 24, 2014); *In re United States (Bernanke)*, 542 F. App'x at 947-49; *In re Dep't of Educ.*, 25 F.4th at 699–705.[2] And the Supreme Court has

---

[2] *See also, e.g.*, *In re McCarthy*, 636 F. App'x. 142, 143-45 (4th Cir. 2015); *Jackson*, 624 F.3d at 1372-73; *Reno and Holder*, 197 F.3d at 313-14; *In re FDIC*, 58 F.3d 1055, 1060-63 (5th Cir. 1995); *Kessler*, 985 F.2d at 512-13.

acknowledged the extraordinary nature of courts compelling the depositions of officials in the President's cabinet by, for example, granting certiorari and staying an order from the Southern District of New York compelling the deposition of the Secretary of Commerce. *See In re Dep't of Com.*, 139 S. Ct. 16, 17 (2018).

Allowing depositions of high-ranking government officials as a matter of course would create "a tremendous potential for abuse or harassment," *K.C.R. v. County of Los Angeles,* Civ. A. No. 13-3806, 2014 WL 3434257, at *3 (C.D. Cal. July 11, 2014) (quotation omitted), and "would . . . likely discourage people" from accepting government positions, *FDIC v. Galan-Alvarez*, Misc. No. 15-00752 (CRC), 2015 WL 5602342, at *4 (D.D.C. Sept. 4, 2015). Such an outcome would threaten the functioning of the Executive Branch because government officials would soon find themselves "spend[ing] 'an inordinate amount of time tending to pending litigation.'" *Lederman*, 731 F.3d at 203 (quoting *Bogan v. City of Boston,* 489 F.3d 417, 423 (1st Cir. 2007)).

This general rule is "no less applicable to former officials than to current officials," so that "the integrity of the administrative process" continues to be "respected." *Galan-Alvarez*, 2015 WL 5602342, at *4 (quashing subpoena seeking testimony of the former chairperson of the FDIC). Further, "[s]ubjecting former officials' decision-making processes to judicial scrutiny and the possibility of continued participation in lawsuits years after leaving public office would serve as a deterrent to qualified candidates for public service." *United States v. Wal-Mart Stores*, Civ. A. No. 01-0152, 2002 WL 562301, at *3 (D. Md. Mar. 29, 2002); *Dobson v. Vail*, Civ. A. No. 10-5233, 2011 WL 4404146, at *1 (W.D. Wash. Sept. 21, 2011) ("Former high-ranking government administrators, whose past official conduct may potentially implicate them in a significant number of related legal actions, have a legitimate interest in avoiding unnecessary entanglements in civil litigation." (citation omitted)).

In light of the above considerations, subjecting high-ranking current and former officials like former Secretary Kelly to depositions in civil actions challenging agency conduct is only permissible where the party seeking the deposition can demonstrate the existence of extraordinary circumstances. *Simplex Time Recorder Co.*, 766 F.2d at 586 ("[T]op executive department officials should not, absent extraordinary circumstances, be called to testify regarding their reasons for taking official actions."); *see also Lederman*, 731 F.3d at 203 ("a party must demonstrate exceptional circumstances justifying the deposition"); *In re Off. of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 278 (5th Cir. 1991) (advising that the district court "shall remain mindful of the requirement that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted"); *Reno & Holder*, 197 F.3d at 313. A party's burden is especially heavy where, as here, the party seeks to compel testimony from a member of the President's cabinet, one of the highest ranking government officials. *See Peoples*, 427 F.2d at 567; *Newman*, 531 F. Supp. 3d at 189.

And even where a party is not seeking to depose a high-ranking government official concerning agency deliberations, but rather for some other purpose, a party must still demonstrate that the official has personal knowledge related to the litigated claims that cannot be obtained through other means. *See Alexander*, 186 F.R.D. at 4 (collecting cases).

The requesting party is responsible for satisfying these heavy burdens. *See, e.g., Reno & Holder*, 197 F.3d at 314 (granting mandamus petition after district court denied motion to quash subpoena issued to the Attorney General and Deputy Attorney General and finding that defendant failed to "show[] that there are no other sources for the information he seeks"); *Bogan*, 489 F.3d at 423-24 (affirming the issuance of a protective order precluding the deposition of the Mayor of Boston where plaintiff failed to demonstrate that the sought-after information was unavailable

from other sources); *Low v. Whitman*, 207 F.R.D. 9, 13 (D.D.C. 2002) (issuing a protective order where the information sought from the EPA's Deputy Chief of Staff was readily available from other witnesses).

## II. Plaintiffs Cannot Meet the Extremely High Standard for the Deposition of a Former Cabinet Secretary

Here, as an initial matter, Plaintiffs have not identified any "extraordinary circumstance" that would warrant the deposition of former Secretary Kelly. *Simplex Time Recorder Co.*, 766 F.2d at 586.

Moreover, Plaintiffs cannot demonstrate that former Secretary Kelly, simply by serving as the Secretary of DHS—in a tenure that ended approximately four months prior to Plaintiffs' separation—has relevant personal knowledge in this FTCA suit. Even if Plaintiffs could articulate the topics upon which former Secretary Kelly supposedly had relevant personal knowledge, they cannot demonstrate that the information they seek cannot be obtained from any other source. *See, e.g.*, *Newman*, 531 F. Supp. 3d at 190 (prohibiting depositions of various high-ranking executive branch officials, including former Secretary Kelly (then-White House Chief of Staff), where the party "failed to demonstrate that the information" sought "could not be obtained elsewhere"); *Kelley v. FBI*, Civ. A. No. 13-0825, 2015 WL 13648073, at *2 (D.D.C. July 16, 2015) (granting motion to quash deposition of then-DHS Secretary Jeh Johnson because the plaintiffs "have not yet established that they cannot obtain the information he may possess elsewhere"); *All. for Glob. Just. v. District of Columbia*, Civ. A. No. 01-00811, 2005 WL 1799553, at *3 (D.D.C. July 29, 2005) ("The court need not address whether the Mayor has the requisite personal knowledge to be deposed, as it is clear that plaintiffs have made no showing that the information they seek cannot be obtained elsewhere."); *Lederman*, 731 F.3d at 203 (depositions of high-ranking officials were

not justified where plaintiffs failed to show "that the relevant information could not be obtained elsewhere").

Courts have quashed subpoenas on this basis in numerous other cases, including in other cases arising in the context of family-separation litigations. *See, e.g.*, *Matter of Sessions*, Misc. No. 23-0016, 2023 WL 7308086, at *3 (S.D. Ala. Nov. 6, 2023) (quashing subpoena to former Attorney General Sessions where the plaintiffs failed to show extraordinary circumstances, and holding that, even if they had made such a showing, the subpoena should be quashed because the plaintiffs "made no showing that the testimony of [other] individuals was somehow insufficient" or otherwise demonstrated that the information sought was "unobtainable by any other way"); Order, *C.M., supra*, ECF No. 325 (denying motion for leave to depose former DHS Secretary Nielsen where plaintiffs had not demonstrated that information sought was "both essential to the case and unobtainable any other way"); Order, *A.P.F. v. United States*, Civ. A. No. 20-0065, ECF No. 319 (D. Ariz. Nov. 20, 2022) (same).[3] There is no basis for a different result here.

Strikingly, Plaintiffs have sought the deposition of a former cabinet secretary without even attempting to depose a single other witness. Putting that failure aside, Plaintiffs already have access to a wealth of information concerning the purported policies challenged in this action, including voluminous discovery produced in other family separation litigations (which the parties have referred to as the "common discovery"). Moreover, the Government has agreed to produce Sector-

---

[3] In another family separation case, pointing to the discovery record developed to date in that case, the magistrate judge permitted the deposition of Secretary Nielsen by written questions pursuant to Rule 31, denying the plaintiffs' request for a seven-hour oral deposition, with a limit on the number of questions permitted. *Matter of Nielsen*, Misc. No. 23-80280, 2024 WL 979947, at *11-12 (N.D. Cal. Jan. 24, 2024). Former Secretary Nielsen has filed a petition for a writ of mandamus in the Ninth Circuit Court of Appeals, and that petition is pending. *See Nielsen v. U.S. Dist. Ct. for the N. Dist. of Cal.*, No. 24-0867 (9th Cir.). The magistrate judge's order permitting the deposition by written examination is stayed pending the outcome of that petition. *See Nielsen v. United States*, Misc. No. 23-80280, 2024 WL 2520469, at *1 (N.D. Cal. Feb. 21, 2024).

specific policy documents concerning the CBP Sector in which Plaintiffs were apprehended and separated, as well as numerous deposition transcripts from other family separation litigations, including the deposition testimony of former CBP Commissioner Kevin McAleenan, former Immigration and Customs Enforcement Acting Director Thomas Homan, and other policy-level government witnesses. In light of the variety of other sources available, Plaintiffs do not come close to meeting their burden of demonstrating that the information they seek is unavailable without deposing a former cabinet official who left DHS months prior to Plaintiffs' separation.

At bottom, Plaintiffs cannot demonstrate "extraordinary circumstances" to compel former Secretary Kelly's deposition, and this Court should accordingly quash the subpoena. Moreover, because of the risks of violating the separation of powers, the potential intrusion into the functioning of the Executive Branch, and the chilling effect on Government officials, *see supra*, the Court should enter a protective order precluding former Secretary Kelly's deposition.[4]

\* \* \*

---

[4] As noted above, Plaintiffs have not articulated the topics upon which they seek to depose former Secretary Kelly. It is possible that Plaintiffs are seeking testimony that implicates privileges, including attorney-client, work product, deliberative process, or executive privileges. To the extent the Court does not quash the deposition subpoena and the deposition takes place, the United States reserves all rights to object during the deposition on any appropriate grounds, including privilege.

## CONCLUSION

Accordingly, for the reasons set forth herein, this Court should quash the deposition subpoena served on former Secretary Kelly and grant the Government's motion for a protective order precluding the deposition from taking place. In the event the Court orders the deposition of former Secretary Kelly, the Government respectfully requests that the Court stay its order to provide the Government time to consider whether to seek appellate relief.

Dated: July 11, 2024

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

By:       */s/ Brian P. Hudak*
BRIAN P. HUDAK
Chief, Civil Division
601 D Street, NW
Washington, DC 20530
(202) 252-2549

OF COUNSEL:
KIMBERLY A. FRANCIS
ALEXANDRA MEGARIS
Assistant United States Attorneys
Eastern District of New York
271-A Cadman Plaza East
Brooklyn, NY 11201
(718) 254-7000 (main)
kimberly.francis@usdoj.gov
alexandra.megaris@usdoj.gov

*Attorneys for the United States of America*